## MUTUAL BLDG. & SAV. ASS'N v. WILKINSON.

(District Court, E. D. Wisconsin. March 21, 1925.)

**Internal revenue ⚯19(1)—Instrument taken by association from member borrower held promissory note, not bond, within federal revenue statute.**

Instrument taken by mutual building and savings association from one of its member borrowers, evidencing loans made them, *held* a promissory note, and not a bond, debenture, or certificate of indebtedness within meaning of federal Revenue Act Oct. 3, 1917, schedule A, §§ 1, 6.

At Law. Action by the Mutual Building & Savings Association against A. H. Wilkinson. Judgment for plaintiff.

Schmitz, Wild & Gross, of Milwaukee, Wis., for plaintiff.

Roy L. Morse, U. S. Atty., of Milwaukee, Wis., for defendant.

GEIGER, District Judge. The plaintiff is a corporation organized under the laws of Wisconsin, and its business and purpose is "the creation and care of a mutual savings fund for the payment to it by its members, and the making of loans to its members therefrom, upon real estate securities and upon such other securities as are authorized by the laws of the state of Wisconsin."

The laws of Wisconsin define quite clearly its powers and its limitations. It can issue stock and make loans to members only, upon their subscriptions, or upon their obligations, for payment or repayment in accordance with the statutes, charter, and rules. Like all such societies, payment for stock or repayment of loans is prescribed upon the ordinary installment plan; and there is a general classification of nonborrowing and borrowing membership or stock. It will be assumed that the character and status of the plan is well recognized under and outside of the statutes as an instrumentality to promote small or moderate installment savings of members to accumulate a fund or to enable the building, principally, of homes, through loans to be discharged by installments. That the Statutes of Wisconsin reflect this purpose is shown, for example, by provisions forbidding "any loans upon property used for manufacturing purposes, or. any theater, public hall, church, school building, hotel, or garage," and also by the provision that mortgages upon real estate "a nonnegotiable note or bond" shall evidence the debt.

The case presents questions arising upon the taxation of the instruments taken by the plaintiff company from its borrowers as evidencing loans made to them. The complaint sets out a copy of such instrument, viz.:

"Milwaukee, Wisconsin, ———, 19—.

"Received of the Mutual Building & Savings Association, of Milwaukee, Wisconsin ——— dollars ($———), as a loan on ——— shares of class———installment (or full-paid) stock in said association, evidenced by passbook and certificate No. ———, which said shares of stock ——— hereby assign, transfer and surrender to said association as collateral security, for the repayment of said money so loaned to and received by ——— from said association. ——— agree to pay monthly not less than ——— dollars, which shall be applied as follows: (This note is also secured by mortgage of even date.) First. To the payment of interest due on said loan amounting to ——— dollars per month. Second. To the payment of premium for precedence due on said loan amounting to ——— dollars per month. Third. To the payment of any fines, or other charges against ——— in pursuance of the by-laws of said association. Fourth. To the payment of the dues on said stock borrowed amounting to ——— dollars per month. Said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned.

"Whenever ——— six months in arrears in the payment of any interest, premiums, fines, dues or any other charges, then the whole amount of said loan shall at once become due and payable at the option of said association, and ——— said stock may, without prior notice to ———, be applied at its then withdrawal value in liquidation of any claims said association may have against ——— hereunder or otherwise, and said association may at any time take judgment against ——— for any deficiency there may be. This instrument shall be in every respect subject to the articles of incorporation, by-laws, rules and regulations of said association and lawful amendments thereto.

"———.          [Seal.]
"———.          [Seal.]
"$———. .
" ———.
"Witness: ———."

Federal Revenue Acts passed since 1917 impose stamp taxes upon a variety of instruments. Thus the act of 1917 (volume 40, p. 321, c. 63, Statutes at Large, schedule A), prescribes:

"Stamp Taxes.

"1. *Bonds of Indebtedness:* Bonds, debentures, or certificates of indebtedness issued on and after the first day of December, 1917, by any person, corporation, partnership, or association on each $100 of face value or fraction thereof, 5 cents: Provided, that every renewal of the foregoing shall be taxed as a new issue: Provided further, that when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured."

"6. Drafts or checks payable otherwise than at sight or on demand, promissory notes, except bank notes issued for circulation, and for each renewal of the same, for a sum not exceeding $100, 2 cents; and for each additional $100 or fractional part thereof, 2 cents."

These provisions remain unaltered, except that in a subsequent revenue act (42 Stat. 303, schedule A, § 1) section 1 above was changed to read as follows:

"1. *Bond of Indebtedness:* On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents." (The provisos remain the same.)

It may also be noted that by separate sections (40 Stat. 321, schedule A, § 2) bonds such as indemnity, surety, and "for the due execution or performance of any contract, obligation, or requirement, or the duties of any office or position, and to account for money received by virtue thereof, and all other bonds of any description, except such as may be required in legal proceedings, not otherwise provided for in this schedule" are specially provided for.

The complaint states the case in substance: That, although the instrument executed to and received by the plaintiff is a promissory note within the meaning of section 6 above cited, the defendant as collector "claiming that said Exhibit A, supra, was not in fact a promissory note, but an instrument coming within and taxable under subdivision 1, cited above, * * * did wrongfully and illegally command and require that the plaintiff attach additional stamps to all of the instruments held by it in form like Exhibit A, in order to meet the requirements of subdivision 1," etc.

Payment for such additional stamps under protest and the taking of due proceedings under the statute for obtaining a review and allowance of plaintiff's claims is averred and judgment for the excess paid is demanded.

A single question arises: Is the instrument in question to be treated as a promissory note within the one, or a bond, debenture, or certificate of indebtedness, within the other, section?

The parties have discussed the question whether the instrument in question can in any aspect be regarded as a "negotiable promissory note." Reference is made to the stipulations for application of installments to interest, premium for precedence, fines, with the suggestion that the sum to be paid is thereby rendered uncertain. The Uniform Instruments Law deals quite particularly with such stipulations—likewise with the presence of a seal—in their effect upon negotiability, and such stipulations do not of themselves destroy it, but, in view of the absence of words which at common law and under the uniform statutes, furnish a test of negotiability, payability to order or bearer, and, more particularly, in view of the presumption that should be indulged, viz. that the plaintiff association intended to take what the law limits it in taking—a *nonnegotiable* note or bond—it should be viewed as a nonnegotiable instrument.

However, this does not help us in determining whether (1) it is a nonnegotiable *note* or a *bond* under the Wisconsin Statute, (2) whether it is a "promissory note, negotiable or nonnegotiable," within one, or (3) whether it is a "bond" or "debenture" within the other, section of the federal act.

While it may not be wholly insignificant that the plaintiff and its members themselves disclosed some sort of an intention when they declared in the instrument, "This *note* is also secured by mortgage of even date," I believe that, within common acceptation, if this instrument contained merely the recitals of receipt of the consideration and promise to repay it in monthly installments, applicable according to the rules and regulations of the association toward the payment of interest, fines, precedence, and maturity of stock pledged collateral thereto, it would be regarded as a note. The parties here are confronted with the impossibility of defining any of the instruments referred to either in the Wisconsin or in the federal statutes with such certainty and precision that each definition will exclude the other. Of course this is not a new problem, and can be illustrated at once, if an attempt be made broadly to define a promissory note, or a bond, so that each definition will exclude the other, re-

gardless of "negotiability"; and this is true because each attempt at definition will include a promise to pay a sum of money, usually definite, respecting amount and period of time. Certainly if in considering section 6 of the federal statute it must be held that "promissory note" means a *negotiable* promissory note such definition would exclude the instrument in question if, as above, it be held to be nonnegotiable. But it cannot be that Congress, in using the term "promissory note," at once intended to exclude all but negotiable promissory notes, and to include within the terms "bond," "debenture," "certificate of indebtedness," ordinary nonnegotiable notes, and also every other conceivable written promise to pay money. Clearly, neither in lexiconic or common acceptation, are these three terms, singly or together, ever regarded as embracing all promises to pay money *excepting checks*, drafts, and *negotiable* promissory notes; or, stating it differently, these are not regarded as including ordinary *nonnegotiable promissory notes*. In these days bonds, debentures, and certificates of indebtedness, commonly include instruments put out as efficacious means for evidencing money security in the open money or investment market. Moreover, they are availed of usually by corporations. Therefore it is hard to avoid the view that section 1 was framed to cover that class of instruments. The framers of the law doubtless also took cognizance of the fact that in recent years individuals resorted to instruments of that class, and hence the clause covering their *"issue"* by *persons* as well as by corporations; and the amendment referred to seems to emphasize this.

The form, the quantum, and character of covenants, the purpose and objects of the instrument as between the parties, play an important part in determining in what class it must fall. I think this is illustrated in the case called to the attention of the court (Danville Bldg. Ass'n v. Pickering [D. C.] 294 F. 117), where Judge FitzHenry considered the question, not whether the instrument there was a note or a bond, but whether, as contended by the plaintiff, it was a taxable instrument at all. It was labeled a "contract" made by a borrowing member, and no question was raised except upon demurrer, which necessitated the consideration of the taxability of the instrument under section 1, supra. Very clearly, when the court once adopted the definitions: "A bond may be briefly defined to be a sealed obligation to pay money." Blackstone defines a bond as: "A deed whereby the obligator obliges himself, his heirs, executors, or administrators, to pay a certain sum of money at a day appointed"—there was no escape from placing the instrument before it (see pages 118, 119) into the category thus created. The form, quantum, and substance of its covenants alone justify it, even though no suggestion was put forth that it might be a note under section 6.

This conflict between precision and finality of definition, so that an instrument may readily be placed within one or another category, undoubtedly was in the mind of Congress in framing these laws, and led it to use terms according to the common understanding of the day. The fact that corporate and municipal bonds, always so denominated, are still promissory negotiable notes; that the Uniform Negotiable Instruments Act leaves sealed instruments within the category of negotiable notes; that "bonds" in the investment market are purchased as such because they are so denominated, undoubtedly led Congress to put into the law the broader term "corporate securities." Now the instrument in question in this case, if it contained words of negotiability (i.e., "to bearer" or "to order"), could readily be placed in the category of negotiable promissory notes, because the amount thereof is certain, and its other provisions merely reiterate conditions of membership in the association, or specify, as ordinary collateral notes may, the authority and manner of its exercise in disposing of collateral. As suggested, the mere omission of words of negotiability does not, either at common law nor in common understanding, withdraw the instrument from the range of notes and throw it into the category of "bonds," as they are now popularly known, nor into the class anciently called "deeds."

The instrument in the Danville Case had all the formality which would enable laymen and lawyers alike to characterize it as a bond. It contained covenants universally found in mortgage deeds or bonds; and it illustrates that the form and substance of an instrument and its covenants, as the parties deliberately choose to frame it, may be a clear and applicable determiner; but, when that is not true, when the parties may justifiably have had in mind the execution and framing of an instrument that may be brought within range of a lighter tax burden; when, because of the peculiar nature of the transaction, viz. between a small borrower and his own association, there could be no thought of executing or framing an instrument known in the money or invest-

ment market as a "bond" or "debenture"; and when the instrument actually framed yields equally to either of two fundamental definitions—a court should not arbitrarily ignore the one, and choose the other, if there appear good reason to ascribe a probable legislative intent to bring it within one rather than the other.

Upon some sort of promptings, the national Legislature saw fit to discriminate between "promissory notes" (which, as I have indicated, should be held to include what the Wisconsin statute denominates a "nonnegotiable *note*") and "bonds" or "debentures." And it is not at all speculative to say that the latter, in the money and investment markets as instrumentalities for producing income on money-seeking investment, were viewed by the Legislature as justly subject to a heavier burden than "notes," "checks," or "drafts"—instrumentalities for effectuating exchanges or for temporary or other purposes.

Now, when we consider the relationship of maker and payee of an instrument like the one before us, the payment whereof is to commence at once, it is entirely proper to test out the question thus: Where would the Legislature, if it were called upon specifically to answer, put the instrument? I think this question may confidently be answered conformably with the plaintiff's contention, and judgment as prayed may be entered.