## INVESTORS' SYNDICATE v. WILLCUTS, Collector of Internal Revenue.

### No. 2044.

District Court, D. Minnesota, Third Division. Dec. 22, 1930.

Clapp, Richardson, Elmquist, Briggs & Macartney, of St. Paul, Minn., for plaintiff.

Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, Sp. Atty., Bureau of Internal Revenue, C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

SANBORN, District Judge.

This cause was tried to the court without a jury, at Winona, Minn., on June 18, 1930.

The action was instituted by the plaintiff to recover federal stamp taxes in the amount of $15,372.75, collected for the period from January 1 to June 30, 1928. It is the claim of the plaintiff that the instruments upon which the tax was levied were not subject to the tax. The facts are set out in the stipulations of fact on file herein, which constitute the findings of fact, and it is not necessary, for the purpose of this decision, to set them out in detail.

The plaintiff, during the tax period involved, issued what are called "Accumulative Installment Certificates." The total sums to be paid at maturity on the certificates involved, aggregating 21,730 in number, was $30,745,500. The form of the certificates is shown by Exhibit A attached to the complaint, and the first page, so far as it is material here, reads as follows:

"This is to Certify that in consideration of the payment of ———— Dollars, annually in advance during the period of ten years from the date hereof, the Investors Syndicate, first party, hereinafter referred to as the Company, hereby promises to pay to ————, of ————, hereinafter referred to as the second party, at the expiration of said period upon presentation and surrender of this Certificate to the Company at its office in the City of Minneapolis, Minnesota, the sum of ———— Dollars.

"This Certificate is subject to the privileges, terms and conditions on the second, third and fourth pages hereof, which are hereby referred to and made a part hereof, as fully as if set forth in the face of this Certificate."

The amount of the contemplated annual payments on each certificate of the maturity amount of $1,000 was $74. In other words, the plaintiff agreed to pay to the certificate holder, at the end of ten years, $1,000 in consideration of his paying in $740 in ten equal annual installments.

The Commissioner of Internal Revenue assessed a stamp tax upon the basis that each of the certificates was taxable under the provisions of Schedule A, subd. 1, title 8, of the Revenue Act of 1926, as amended by the Revenue Act of 1928 (amendments not material), at the rate of 5 cents for each $100 or fraction thereof of the amount which he construed to be the face value of each certificate, which was the amount promised to be paid at its maturity provided the annual payments were made by the holder or his assignee.

The certificates had no cash or surrender value until after eighteen months from the date of the first installment, or six months after the second installment.

The questions presented are these:

1. Were these certificates corporate securities subject to the stamp tax imposed by schedule A–1, title VIII of the Revenue Act of 1926?

2. If so, was the face value of each certificate the amount which would be paid at its maturity in case no default occurred?

Schedule A–1, so far as here material, reads as follows:

"Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents."

The plaintiff contends that the instruments issued by it were not either bonds, debentures, certificates of indebtedness, or corporate securities with interest coupons or in registered form.

Each certificate had a provision in it relating to its assignment, as follows:

"This Certificate if in force and uncancelled on the books of the company may be assigned, but the assignment or transfer hereof shall not be valid without the consent in writing endorsed hereon by the company and a transfer fee of $1.00 paid to the company."

The certificate acknowledges the receipt of the first installment due under it, expresses the obligations of the plaintiff to its certificate holder, is in the form of a bond, and a record of it and of any assignment is kept by the plaintiff.

Apparently Congress intended by the act in question to reach every form of corporate security, as that term is generally understood, and the tendency of the courts has been

to give to the language a liberal construction. Fidelity Trust Co. v. Lederer (D. C.) 276 F. 51; Id., 267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494; Mutual Building & Savings Ass'n v. Wilkinson (D. C.) 8 F.(2d) 183.

The contracts of the plaintiff have been considered as falling within the Securities Law of Minnesota. See In re Investors' Syndicate, 147 Minn. 217, 179 N. W. 1001.

My conclusion is that the language of the Revenue Act is sufficiently broad to include the certificates issued by the plaintiff.

█ I am unable to convince myself, however, that these certificates, at the time of their issuance, had any face value.

The government's theory is that the face value was to be measured by the amount which the plaintiff promised to pay at the maturity of the certificate. From the instrument itself, it can be ascertained that, at the time of issuance, it had no value, and that it was not until eighteen months thereafter and upon payment of a second installment that it first became of any value.

The government's contention in this case, to my mind, is not substantially different from its contention in the case of Goodyear Co. v. United States, 273 U. S. 100, 47 S. Ct. 263, 71 L. Ed. 558. There the court had under consideration the provision of the Revenue Acts of 1918 and 1921 (40 Stat. 1057 and 42 Stat. 227) imposing a stamp tax of two cents upon each "$100 of face value or fraction thereof." It is true that in that case the government conceded that "face value," as used in the statute, was synonymous with par value, but contended that it was the par value as shown upon the face of the certificates there in question which was to be used in determining the tax. The Supreme Court said, at page 102 of 273 U. S., 47 S. Ct. 263:

"To say that the term 'face value' is intended to apply to a fictitious statement of value on the face of the certificates, having no relation to the actual par value, would be to give the statute a strained construction and open the way for evasion. Obviously the face or par value of the stock transferred is to be determined by an inspection of the instrument which alone fixes par value, namely, the corporate charter. The statements in the certificate of incorporation as amended and not those appearing on the face of the stock certificates control."

"The 'face' of an instrument is that which is shown by the language employed without any explanation, modification, or addition from extrinsic facts or evidence. In re Stoneman [Sur.], 146 N. Y. S. 172, 174." 3 Words and Phrases, Third Series, page 492. Therefore, the "face value" is the value which can be ascertained from the language of the instrument without any aid from extrinsic facts or evidence.

An examination of the language of these certificates shows that the amount which will be paid at maturity, if all conditions are complied with by the holders, has no relation to their value at the time they are issued, as shown by the language of the certificates themselves. It is true, as the government contends, that the face value of a bond or other unconditional promise to pay a certain amount of money at a certain time in the future is the amount due at maturity, although the instrument may be worth much less than that. That is because the value at maturity is the only value which can be determined from the language of the instrument.

From the facts stated in the stipulations, I find generally in favor of the plaintiff that it is entitled to judgment as prayed for in its first and third causes of action. Judgment may be entered accordingly.